UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CATHERINE A. KERN, on behalf of herself and
CLEAN WATER ADVOCATES OF NEW YORK,

and

KATHY R. KAMINSKI, on behalf of herself and the
NIAGARA RIVER PRESERVATION SOCIETY,

                                        Plaintiffs,

          v.                                                                 Civil No.:

WAL-MART STORES, INC.,

WAL-MART REAL ESTATE BUSINESS TRUST,

CITY OF NORTH TONAWANDA, and

STANLEY GEE, in his Official and Individual
Capacities as Acting Commissioner of the NEW YORK
STATE DEPARTMENT OF TRANSPORTATION,

                                        Defendants.
_____

# **COMPLAINT**

        Plaintiffs, CATHERINE A. KERN, on behalf of herself and CLEAN WATER

ADVOCATES OF NEW YORK, and KATHY R. KAMINSKI, on behalf of herself and the

NIAGARA RIVER PRESERVATION SOCIETY, for their Complaint against WAL-MART

STORES, INC., WAL-MART REAL ESTATE BUSINESS TRUST, CITY OF NORTH

TONAWANDA, and STANLEY GEE, Acting Commissioner of the NEW YORK STATE

DEPARTMENT OF TRANSPORTATION state as follows:

1.      Plaintiffs bring this action for declaratory and equitable relief and for imposition of civil penalties against Wal-Mart Stores, Inc., Wal-Mart Real Estate Business Trust, the City of North Tonawanda, and Stanley Gee, Acting Commissioner of the New York State Department of Transportation pursuant to the citizen suit provisions of the Federal Water Pollution Control Amendments of 1972, known as the Clean Water Act, Section 505, 33 U.S.C. § 1365, as amended (referred to hereinafter as "CWA"), due to Defendants' violations of the statute.

## **PARTIES**

2.      Plaintiff CATHERINE A. KERN, residing at 1248 Greenbrier Lane in the City of North Tonawanda, is the President of CLEAN WATER ADVOCATES OF NEW YORK ("CWANY").  Plaintiff CWANY is an unincorporated association whose members are residents of the State of New York and citizens of the United States.

3.      Plaintiff KATHY R. KAMINSKI, residing at 40 Plaza Drive, Williamsville, New York, is the President of the NIAGARA RIVER PRESERVATION SOCIETY ("NRPS").  Plaintiff NRPS is an unincorporated association whose members are residents of the State of New York and citizens of the United States.

4.      References to "members" herein are to one or more members of CWANY and NRPS.

5.      Some of the bodies of water that are being and will be polluted as a result of the acts and omissions complained of below are the Tonawanda Creek, Niagara River, and Lake Ontario.

6.      Plaintiffs and the members of CWANY and NRPS use the abovementioned bodies of water for recreational purposes, including but not limited to boating, fishing, and swimming.

7.      As a result, Plaintiffs and the members of CWANY and NRPS have direct exposure to the pollutants Defendants discharge into these bodies of water.

8.      Plaintiffs and the members of CWANY and NRPS drink water from public water supplies that draw water from Tonawanda Creek (via the Niagara River), the Niagara River itself, and Lake Ontario.

9.      Plaintiffs are citizens within the meaning of the citizen suit provision of the CWA, Section 505(a), 33 U.S.C. § 1365(a).

10.      Defendant Wal-Mart Stores, Inc. is a foreign corporation licensed to do business in New York State.  Upon information and belief, Defendant Wal-Mart Real Estate Business Trust is a foreign corporation doing business and owning property in New York State (collectively "Wal-Mart").

11.      Defendant City of North Tonawanda (hereinafter "City") is a municipal corporation operating under the laws of the State of New York with its principal office located at 216 Payne Avenue, North Tonawanda, New York 14120.

12.      Defendant Stanley Gee is the Acting Commissioner of the New York State Department of Transportation (hereinafter "NYSDOT"), an Official of the State of New York. NYSDOT's principal office is located at 50 Wolf Road, Albany, NY 12232.

13.     Defendants are "persons" within the meaning of the citizen suit provisions of the CWA, Section 505(a)(1), 33 U.S.C. § 1365(a)(1).

## JURISDICTION

14.     This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1) and 28 U.S.C. § 1331.

15.     The relief requested in this action is authorized pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a).

16.     This Court has jurisdiction over Plaintiff's declaratory and injunctive claims set forth in this Complaint pursuant to 28 U.S.C. § 2201(a) and 28 U.S.C. § 2202 respectively, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

## VENUE

17.     Venue is appropriate in the Western District of New York pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because Defendants' violations occurred and are occurring in this judicial district and because, pursuant to 28 U.S.C. § 1391(b), the real property on which the discharge and emission sources are located includes real property within this judicial district, the Defendants either reside or do business within this judicial district, and many of the events, acts or omissions giving rise to this Complaint occurred and are occurring in this judicial district.

## NOTICE

18.     On September 2, 2008 and July 6, 2010, for all violations requiring advance notice, Plaintiffs gave notice of their intent to file suit to Defendants as required by Section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A).  Copies of these notice letters are attached as **Exhibits A and B** respectively.

19.     More than 60 days have passed since notice was served upon Defendants and all governmental parties named above, thus satisfying Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

## CONTINUING VIOLATIONS

20.     As of the date of the filing of this Complaint, all of the violations complained of in the notices of intent to file suit and in this Complaint are continuing or are reasonably likely to recur.

## ADDITIONAL VIOLATIONS

21.     As Plaintiffs alleged in their notice letters, Defendants have caused regular discharges of pollutants into the waters of the United States.  Wherever records of specific discharges were available from the regulatory agencies or from Plaintiffs' own observations, Plaintiffs have included the dates and specifics.  Upon information and belief, documents in Defendants' possession and not otherwise available include proof of specific dates and circumstances of other unlawful discharges.  These discharges are constructively included in

Plaintiffs' notice letters so long as they result predictably from Defendants' violations and poor management practices described in those letters.

## NO PENDING ENFORCEMENT ACTIONS

22.     Neither the United States Environmental Protection Agency (hereinafter "USEPA") nor the State of New York has commenced or is diligently prosecuting a civil or criminal action to redress the violations set forth in this Complaint.  Neither the United States, the Administrator of USEPA, nor the State of New York has commenced an administrative civil penalty action satisfying the requirements of Section 309(g)(6) of the CWA, 33 U.S.C. § 1319(g)(6), to redress the violations prior to the issuance of the notice letters.

## RELEVANT PROVISIONS OF THE CLEAN WATER ACT

23.     The CWA prohibits the discharge of pollutants from a point source to waters of the United States, except pursuant to and in compliance with a National Pollutant Discharge Elimination System (hereinafter "NPDES") permit.  33 U.S.C. §§ 1311(a), 1342.

24.     USEPA has delegated to the New York State Department of Environmental Conservation (hereinafter "NYSDEC") the authority to issue, enforce, and administer permits under Section 402 of the CWA.

25.     NYSDEC issues permits pursuant to Section 402 of the CWA under its State Pollutant Discharge Elimination System ("SPDES") permit program.

26.     The CWA defines the term "pollutant" as including, but not limited to, "dredged soil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharging into water."  33 U.S.C. § 1362(6).

27.     The CWA defines discharge of a pollutant as "any addition of any pollutant to navigable waters from any point source."  33 U.S.C. § 1362(12).

28.     The CWA defines "point source" as "any discernible, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."  33 U.S.C. § 1362(14). Activities that constitute a "construction activity" within the meaning of 40 CFR § 122.26(b)(14)(x), (15)(i), (15)(ii), are point sources as defined by the CWA.

29.     Navigable waters means "waters of the United States, including the territorial seas."  33 U.S.C. § 1362(7).

30.     This citizens' suit is intended, in part, to rectify a pattern of pervasive CWA violations for which NYSDOT, municipal corporations, and developers are responsible.

# DEFENDANTS' VIOLATIONS OF THE CLEAN WATER ACT

## AS AND FOR A FIRST CAUSE OF ACTION

### DEFENDANT WAL-MART VIOLATES THE CLEAN WATER ACT BY DISCHARGING POLLUTANTS INTO WATERS OF THE UNITED STATES WITHOUT COVERAGE UNDER THE SPDES GENERAL PERMIT FOR STORMWATER DISCHARGES FROM CONSTRUCTION ACTIVITIES

31.     Plaintiffs incorporate by reference all of the allegations in paragraphs 1 through 30 of their Complaint as if set forth herein.

32.     Wal-Mart is currently developing a project site in the City of North Tonawanda that will disturb 38.7 acres (hereinafter "Project Site").

33.     The Project Site is located west of Niagara Falls Boulevard, east of Wurlitzer Drive, south of the former Wurlitzer factory complex, and north of a small residential subdivision, together with approximately 8.1 acres of other disturbed areas, including improvements to Niagara Falls Boulevard, utility connections, and construction of a parking area on the Wurlitzer property.

34.     The project requires demolition of the former, historic "Melody Fair" theater and associated facilities.

35.     The demolition of "Melody Fair" theater and associated facilities began on or about April 6, 2010, and is substantially complete.

36.     The demolition has involved physical alteration of the land including scraping, clearing, and other soil disturbances totaling several acres.

37.     Surface water runoff from this disturbed area flows into the Tonawanda Creek by means of the City of North Tonawanda MS4 (a 90 inch diameter storm sewer system along Wurlitzer Drive) and Sawyer Creek.

38.     The Wal-Mart Project Site is a point source.

39.     The Project Site discharges pollutants into waters of the United States.

40.     Upon information and belief, the demolition activities that have taken place to date on the Project Site have not been pursuant to the SPDES General Permit for Discharges from Construction Activities or any other permit issued by NYSDEC pursuant to its delegated authority under the CWA.

41.     Thus, the discharges from construction activities to date have no permit.

42.     As a result, Defendant Wal-Mart has violated the CWA by discharging pollutants, from a point source, into waters of the United States, without a permit.

43.     The CWA authorizes citizens to enforce an effluent limitation or other limitation under either Section 301 or 302, including the prohibition in Section 301 against the operation of a point source other than in conformity with an NPDES permit pursuant to Section 402 of the CWA, 33 U.S.C. §§ 1342, 1365(a)(1), (f)(6).

44.     Each day that Defendant Wal-Mart has operated or operates other than in conformity with an NPDES permit is a separate and continuing violation of the CWA that subjects Defendant to a fine of up to $37,500 per day for each of its point source discharges.  33 U.S.C. § 1319(c).

## AS AND FOR A SECOND CAUSE OF ACTION

## DEFENDANT CITY OF NORTH TONAWANDA VIOLATES THE CWA BY FAILURE TO COMPLY WITH THE GENERAL PERMIT FOR STORMWATER DISCHARGES FROM MUNICIPAL SEPARATE STORM SEWER SYSTEMS

45.     Plaintiffs incorporate by reference all of the allegations in paragraphs 1 through 44 of their Complaint as if set forth herein.

46.     Upon information and belief, the City is a regulated small municipal separate storm sewer system (MS4) as defined in 40 CFR § 122.26(b)(16).

47.     The City owns numerous outfalls into intermittent streams, perennially flowing streams, and the Niagara River that all constitute waters of the United States.  Upon information and belief, the City does not have an individual permit for said discharges.

48.     Upon information and belief, the following terms and conditions of applicable SPDES General Permits for Stormwater Discharges from Municipal Separate Storm Sewer Systems (MS4s) are being violated on a continuous basis by the City (applicable permits GP-02-02, GP-0-08-002, and GP-0-10-002 are attached hereto as **Exhibits C, D, and E** respectively).

49.     The City has not developed, implemented, and enforced a stormwater management program ("SWMP") designed to reduce the discharge of pollutants from its MS4 to the maximum extent practicable, as required by the applicable permits (GP-02-02, IV.B; GP-0-08-002, IV.A; GP-0-10-002, IV.A).

50.     Upon information and belief, the City has not presented the draft annual reports due in March 2008 and March 2009 required under the applicable permits (GP-02-02,

V.C; GP-0-08-002, V.C), at meetings open to the public, where public attendees may ask questions about and make comments on the report.

51.     With respect to the March 2008 and March 2009 annual reports, the City did not place its draft annual reports on the agendas of the board or body required to hold the open meetings.  The City also failed to make public the dates and times of the meetings and to make the draft reports available to the public for prior review and comment.  (GP-02-02, IV.B.2; GP-0-08-002, V.C and VII.A.2).

52.     The City did not include a summary of comments and intended responses in its March 2008 and March 2009 annual reports, nor has it made the final reports available for public inspection.  (GP-02-02, IV.B.2.g; GP-0-08-002, V.C.2.c).

53.     The City has not submitted annual reports on or before June 1st of 2008, 2009, and 2010 in an approved format, containing the required information, in compliance with applicable permits.  (GP-02-02, IV.C.4.b.ix; GP-0-08-002, III.B.1 and VII.A.1.d; GP-0-10-002, III.B).

54.     As a result, the City was in noncompliance with its MS4 general permit for the calendar quarter running from April 1, 2008 through June 30, 2008, having committed a reporting violation described by USEPA as "schedule event unachieved and not reported; MS4 program report."

55.     As a further result, the City was in noncompliance with its MS4 general permit for the calendar quarter running from July 1, 2008 through September 30, 2008, having

committed a reporting violation described by USEPA as "schedule event unachieved and not reported; MS4 program report."

56.     The City was in noncompliance with its MS4 general permit for the calendar quarter running from October 1, 2008 through December 31, 2008, having committed a reporting violation described by USEPA as "schedule event unachieved and not reported; MS4 program report."

57.     The City was in noncompliance with its MS4 general permit for the calendar quarter running from January 1, 2009 through March 31, 2009, having committed a reporting violation described by USEPA as "schedule event unachieved and not reported; MS4 program report."

58.     The City was in noncompliance with its MS4 general permit for the calendar quarter running from April 1, 2009 through June 30, 2009, having committed four separate reporting violations described by USEPA as (1) "schedule event unachieved and not reported; MS4 program report"; (2) "schedule event reported late; MS4 program report"; (3) "schedule event achieved late but reported; MS4 program report"; (4) "schedule event unachieved but reported; MS4 program report."

59.     The City was in noncompliance with its MS4 general permit for the calendar quarter running from July 1, 2009 through September 30, 2009, having committed two reporting violations described by USEPA as (1) "schedule event unachieved and not reported; MS4 program report" and (2) "schedule event unachieved but reported; MS4 program report."

60.     The City was in noncompliance with its MS4 general permit for the calendar quarter running from October 1, 2009 through December 31, 2009, having committed a reporting violation described by USEPA as "schedule event unachieved and not reported; MS4 program report."

61.     The City was in noncompliance with its MS4 general permit for the calendar quarter running from January 1, 2010 through March 31, 2010, having committed a reporting violation described by USEPA as "schedule event unachieved and not reported; MS4 program report."

62.     The City has not developed measurable goals and selected appropriate public involvement activities to ensure the reduction of all of the pollutants of concern in stormwater discharges to the maximum extent practicable.

63.     The City has not developed and implemented measurable goals and appropriate management practices to ensure the reduction of all pollutants of concern in construction stormwater discharges that are tributary to the MS4 system, to the maximum extent practicable.

64.     The City has not developed measurable goals and selected appropriate management practices as required by applicable permits.  (GP-02-02, IV.C.5.d; GP-0-08-002, VII.A.5.d; GP-0-10-002, VII.A.5.d).

65.     Upon information and belief, the City has not developed and implemented an operation and maintenance program reducing and preventing pollutant discharges from its own municipal activities, through following management practices identified in NYSDEC-

approved references, and developed measurable goals and selected appropriate management

practices to ensure the foregoing reduces pollutants of concern to the maximum extent

practicable, as required under applicable permits.  (GP-02-02, IV.C.6; GP-0-08-002, VII.A.6;

GP-0-10-002, VII.A.6).

66.     The CWA authorizes citizens to enforce an effluent limitation or other

limitation under either Section 301 or 302, including the prohibition in Section 301 against the

operation of a point source other than in conformance with an NPDES permit pursuant to Section

402 of the CWA, 33 U.S.C. §§ 1342, 1365(a)(1), (f)(6).

67.     Each day that the City has operated or operates other than in conformance

with an NPDES permit is a separate and continuing violation of the CWA that subjects

Defendant to a fine of up to $37,500 per day for each of its point source discharges.  33 U.S.C. §

1319(c).  Any new connections that would result in a more than *de minimis* addition to existing

stormwater discharges should be enjoined.

## AS AND FOR A THIRD CAUSE OF ACTION

## DEFENDANT STANLEY GEE VIOLATED AND IS VIOLATING THE CWA BY NYSDOT'S FAILURE TO OBTAIN COVERAGE UNDER THE SPDES GENERAL PERMIT FOR STORMWATER DISCHARGES FROM CONSTRUCTION ACTIVITIES

68.     Plaintiffs incorporate by reference all of the allegations in paragraphs 1

through 67 of their Complaint as if set forth herein.

69.     NYSDOT is a regulated municipal separate stormsewer system (MS4) as

defined in 40 C.F.R. § 122.26(b)(16).

70.     Upon information and belief, NYSDOT owns and exclusively possesses tens of thousands of miles of right-of-way crisscrossing the State of New York.

71.     As to any construction activity within this right-of-way, discretionary NYSDOT permission is required.

72.     Typically, such permission is obtained through a NYSDOT right-of-way highway work permit.

73.     No person may construct upon or physically alter the NYSDOT right-of-way without the permission of NYSDOT.

74.     NYSDOT is therefore an owner and operator as defined under the SPDES General Permit for Stormwater Discharges from Construction Activity, issued by NYSDEC in fulfillment of its CWA authority.

75.     Commonly, construction activities on real property adjacent to NYSDOT rights-of-way rely upon and are integrated into NYSDOT's stormsewer systems.

76.     Also, real estate developers frequently seek to locate driveways, ingress and egress lanes, utilities, and other aspects of their development projects on NYSDOT rights-of-way, subject, of course, to NYSDOT's discretionary approval.

77.     As a rule, these development activities on NYSDOT rights-of-way are part of a "larger common plan of development" as defined in the SPDES General Permit for Stormwater Discharges from Construction Activity (the SPDES General Permit for Stormwater Discharges from Construction Activity is attached hereto as **Exhibit F**).

78.     Because NYSDOT is an owner and operator of such construction activities undertaken within its rights-of-way, such activities require NYSDOT to obtain permit coverage for resultant stormwater discharges.

79.     However, it is NYSDOT's policy, practice, and procedure not to obtain such permit coverage.  NYSDOT's violations asserted herein are ongoing in nature and reflect NYSDOT's actual policy, practice, and custom.

80.     At the present time, NYSDOT is allowing and causing stormwater runoff from construction activities into its MS4 systems at a large number of construction sites across the State of New York.

81.     NYSDOT is required for reasons described above, to obtain coverage under the SPDES General Permit for Stormwater Discharges from Construction Activities from these construction sites.

82.     At construction sites throughout the State, NYSDOT is allowing and causing discharges without having obtained the required permit coverage under the SPDES General Permit for Stormwater Discharges from Construction Activities.

83.     At premises commonly known as 3650 Millersport Highway, upon information and belief, there is a construction project underway, sponsored by Bryant & Stratton, entailing the physical disturbance of approximately 5.6 acres and incorporating construction in the NYSDOT right-of-way.  The stormwater runoff from this construction activity is being discharged into a NYSDOT MS4, from which it is then discharged into the Tonawanda Creek, waters of the United States regulated under the CWA.

84.     At premises commonly known as 5319 Enterprise Drive in the Town of
Lockport, New York, upon information and belief, there is a construction project underway,
entailing the physical disturbance of approximately 21.9 acres and incorporating the following
construction in the NYSDOT right-of-way:  the placement of stormwater culverts and rip-rap fill
in the NYSDOT right-of-way.  Stormwater runoff from these construction activities is being
discharged into a culvert (part of a NYSDOT MS4) under a New York State Highway, known as
Lockport-Junction Road, Route 93 and into a drainage ditch that discharges into Bull Creek and
then into Sawyer and Tonawanda Creeks, waters of the United States regulated under the CWA.

85.     At premises commonly known as 5014 Transit Road in the Town of
Cheektowaga, New York, upon information and belief, there is a construction project underway,
entailing the physical disturbance of approximately 1.4 acres and incorporating the following
construction in the NYSDOT right-of-way:  the cutting of the state highway to tap in to the
NYSDOT storm sewer.  Upon information and belief, at a minimum, the tap-in required digging
of trenches, cutting of road pavement, storm sewer placement, and gravel fill within the
NYSDOT right-of-way.  Stormwater runoff from this project site is being discharged into a
NYSDOT MS4, from which it is then discharged into a tributary of Slate Bottom Creek and then
into Cayuga Creek, waters of the United States regulated under the CWA.

86.     At premises at the intersection of Sheridan Drive and Colvin Boulevard in
the Town of Tonawanda, New York, upon information and belief, there is a construction project
underway, entailing the physical disturbance of approximately 2.9 acres and incorporating the
following construction in the NYSDOT right-of-way:  driveway demolition and reconstruction
for ingress and egress.  The stormwater runoff from this construction activity is being discharged

into a NYSDOT MS4, from which it is then discharged into Ellicott Creek which flows into

Tonawanda Creek, waters of the United States regulated under the CWA.

87.    This is part of a pattern of discharges into NYSDOT storm sewers across

New York State.  Upon information and belief, a representative sampling of dozens of such

ongoing construction projects outside of Western New York incorporating discharges into

NYSDOT MS4s is as follows:

a)    The "Dickerson Waste Site" project undertaken by Cold Spring

Construction in the Town of Lindley, Steuben County, which entails disturbance

of 13.2 acres.

b)    A project undertaken by the Town of North Greenbush, in

Rensselaer County, involving the disturbance of 5.8 acres.

c)    The "Deer Meadows" subdivision in Franklin County, involving

the disturbance of 8.9 acres.

d)    A National Grid construction project in the County of Oneida,

involving the disturbance of 4.2 acres.

e)    The Tollbrothers, Inc. subdivision known as "Fish Kill Woods" in

the Town of Fish Kill, Dutchess County, involving the disturbance of 20.6 acres.

88.    Upon information and belief, at each of the construction sites mentioned in

the preceding paragraph, construction in the NYSDOT right-of-way required NYSDOT to obtain

coverage under the SPDES General Permit for Stormwater Discharges from Construction

Activities; it did not.

89.     In each of these examples listed above, upon information and belief, the following elements are present:

a)      construction activities requiring permits under Section 402 of the CWA for stormwater discharges are ongoing;

b)      stormwater discharges have been and will continue to be discharged from the site, both during and after construction, into an MS4 owned and operated by NYSDOT;

c)      the NYSDOT MS4 is situated within the highway right-of-way owned by the State of New York and operated by NYSDOT;

d)      parts of the listed development projects include construction activities located on the NYSDOT highway right-of-way; construction activities within the highway right-of-way are integral components of the entire project (*e.g.*, ingress and egress to the project sites, utility connections, facilitation of drainage from the project site);

e)      in some, if not all, of the listed projects, there is physical alteration to the NYSDOT MS4 itself, for example, through new and enlarged tap-ins from storm sewers draining the development project sites into the NYSDOT MS4s;

f)      NYSDOT has failed and refused to obtain a permit for construction activities it allows on its highway right-of-way even though those

construction activities are an integral part of a plan of common development with the development projects listed above;

g)     as to work done within the NYSDOT highway right-of-way, NYSDOT is the owner or operator as defined in Permit No. GP-0-10-001 because it owns or controls the property on which the construction activity is occurring and is an entity that, by virtue of its ownership and its highway right-of-way work permit regulations, has operational control over the construction plans and specifications for work done within its right-of-way; and

h)     as a result, stormwater associated with construction activity is discharged via NYSDOT MS4s into various creeks, streams and other bodies of water constituting waters of the United States regulated under the CWA.

90.     By discharging pollutants into waters of the United States other than in conformance with an NPDES permit, NYSDOT has violated and is violating Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311, 1342.

91.     The CWA authorizes citizens to enforce an effluent limitation or other limitation under either Section 301 or 302, including the prohibition in section 301, 33 U.S.C. § 1311, against the operation of a point source other than in conformity with an NPDES permit pursuant to Section 402 of the CWA, 33 U.S.C. §§ 1342, 1365(a)(1), 1365(f)(6).

92.     Plaintiff is entitled to a judgment for prospective injunctive relief against the Defendant Stanley Gee, preventing him from violating the CWA and ordering him to require NYSDOT to obtain coverage under and to abide by the conditions and terms of the SPDES

General Permit for Stormwater Discharges from Construction Activity where construction activity within NYSDOT's right-of-way is part of a larger common plan of development that is required to obtain permit coverage.

### AS AND FOR A FOURTH CAUSE OF ACTION

**DEFENDANT STANLEY GEE HAS VIOLATED THE CWA BY NYSDOT'S FAILURE TO COMPLY WITH THE GENERAL PERMIT FOR STORMWATER DISCHARGES FROM MUNICIPAL SEPARATE STORM SEWER SYSTEMS**

93.     Plaintiffs incorporate by reference all of the allegations in paragraphs 1 through 92 of their Complaint as if set forth herein.

94.     All municipal separate stormwater sewer systems (MS4s) that are located in "urbanized areas" as defined by the Bureau of the Census, plus additional certain designated MS4s, must establish stormwater management programs whose components match a federal standard, and that integrate review of stormwater pollution prevention plans ("SWPPPs") prepared in compliance with the aforesaid SPDES general permits for stormwater discharges from industrial and small construction activities, into local land use regulation and agency determinations.

95.     Under what is known as "Phase II," state and federal regulations require operators of regulated MS4s to obtain coverage under either an individual or an appropriate general permit.  This program has been delegated to New York State as part of the National Pollutant Discharge Elimination System under Section 402 of the CWA.  33 U.S.C. § 1342.

96.     NYSDOT is a regulated MS4.

97.     Phase II of the National and State Stormwater Regulatory Programs commenced in the year 2003, and encompassed certain MS4s, including NYSDOT.  NYSDOT, in order to gain SPDES permit coverage, filed a "Notice of Intent" or "NOI" with NYSDEC, availing itself of the SPDES General Permit for Stormwater Discharges from MS4s (Permit No. GP-02-02).  Its effective date was January 8, 2003, and its expiration date was January 8, 2008, though it appears to have been extended to April 30, 2008.

98.     Then, effective May 1, 2008, NYSDOT availed itself of continuing SPDES General Permit coverage available through GP-0-08-002.

99.     In New York State, prior to submission of an NOI to NYSDEC, the operator of an MS4 must have developed a stormwater management program ("SWMP").  The SWMP was to have been fully developed and implemented by March 10, 2003.

100.    Permittees such as NYSDOT that had initial coverage under GP-02-02, and then had coverage under GP-0-08-002, were obligated under the 2008 General Permit to develop a "SWMP Plan" by March 9, 2009.  (This obligation remains in force; furthermore, references to the MS4 permits are, throughout this complaint, intended to be to predecessor and successor provisions.)

101.    Upon information and belief, NYSDOT has not developed, adopted, and implemented a SWMP Plan.

102.    NYSDOT's MS4s have numerous outfalls that discharge into waters of the United States.  Upon information and belief, the number of outfalls measures in the thousands.

103.    In addition, upon information and belief, NYSDOT has created and maintains tens of thousands of miles of culverted storm sewers and highway drainage ditches in all parts of the State of New York.

104.    Upon information and belief, at numerous locations, NYSDOT has permitted the connection of storm sewers and other point sources (as defined in the CWA) to this system of storm sewers and highway drainage ditches, from public and privately owned lands located outside of NYSDOT's rights-of-way.

105.    Ultimately, the polluted stormwater runoff is collected in ponds, ditches, sewers and culverts, wetlands and onsite watercourses and then discharged directly or indirectly into NYSDOT storm sewers and highway drainage ditches, and then into local creeks, rivers, ponds, lakes, bays, estuaries and seas.

106.    The NYSDOT-owned-and-maintained system of stormsewers and drainage ditches are point sources within the meaning of the CWA.  The ditches, culverts, streams and swales that discharge stormwater from the aforesaid watersheds and subwatersheds into the NYSDOT-owned-and-maintained system also constitute point sources within the meaning of the CWA.

107.    The NYSDOT stormsewers and outfalls discharge into various waters of the United States, including hundreds of perennially and intermittently flowing streams (and their adjacent wetlands) that are tributary to other waters, including Long Island Sound, the Atlantic Ocean, New York Harbor, East River, Hudson River, Mohawk River, Lake George, Lake Champlain, the St. Lawrence River, Lake Ontario, Niagara River and Lake Erie, that are all navigable-in-fact.

108.   Pursuant to the CWA and its implementing regulations, the current MS4 permit, GP-0-10-002 states that:

> A covered entity must comply with all conditions of this permit.
> Any permit noncompliance constitutes a violation of the CWA and
> the ECL and is grounds for enforcement action.

(GP-0-10-002, VI.B; *see also* GP-02-02, VI.A and GP-0-08-0002, VI.B).

109.   The following terms and conditions of applicable permits, upon information and belief, have been and are being violated on a continuous basis by NYSDOT:

a.   NYSDOT's 2009 annual report does not provide either an assessment or an evaluation of the appropriateness of the identified BMPs, of the progress toward reducing the discharge of pollutants, or of the identified measurable goals for each of the minimum control measures (MCMs).  (GP-0-08-002, V.C.3.b).

b.   NYSDOT's 2009 annual report fails to include the results of information collected and analyzed, monitoring data, or any assessment of its MS4's SWMP progress toward reducing the discharge of pollutants during the reporting period.  The report also fails to include results of assessments of effectiveness in meeting no net increase requirements or total maximum daily load (TMDL) loadings (as required by GP-0-08-002, III.B.1 and 2).  (GP-0-08-002, V.C.3.c).

    c.  NYSDOT has failed to make the SWMP plan available for public review and the location where it is available.  (GP-0-08-002, V.C.3.i, GP-0-10-002, V.C.3.i).

    d.  NYSDOT has not conducted an outfall reconnaissance inventory that addresses every outfall within the urbanized area and additionally designated area within the permittee's jurisdiction at least once every five years, with reasonable progress each year (as described in the EPA publication entitled <u>Illicit Discharge Detection and Elimination : A Guidance Manual for Program Development and Technical Assessment</u>).  (GP-0-08-002, VIII.A.3; GP-0-10-002, VIII.A.3).

    e.  NYSDOT has not established and maintained an inventory of active construction sites, including the location of the site and owner/operator contact information.  (GP-0-08-002, VIII.A.4.a.viii; GP-0-10-002, VIII.A.4.a.viii).

    f.  NYSDOT has not developed, recorded, periodically assessed or modified measurable goals in an attempt to lessen construction site stormwater.  (GP-0-08-002, VIII.A.4.a.ix, VIII.A.5.c; GP-0-10-002, VIII.A.4.a.ix, VIII.A.5.c).

    g.  NYSDOT has not selected appropriate construction stormwater best management practices and measurable goals to ensure the reduction of all pollutants of concern in stormwater discharges to the maximum

extent practicable.  (GP-0-08-002, VIII.A.4.a.x., VIII.A.5.d; GP-0-10-002, VIII.A.4.a.x, VIII.A.5.d).

h.      NYSDOT has not developed, implemented or enforced a program that provides equivalent protection to the New York State SPDES General Permit for Stormwater Discharges from Construction Activities.  (GP-0-08-002, VIII.A.5.a; GP-0-10-002, VIII.A.5.a).

i.      NYSDOT has failed to develop, implement, or enforce a program that includes a combination of structural management practices and/or non-structural management practices appropriate for the NYSDOT that will reduce the discharge of the pollutants to the maximum extent practicable, in compliance with applicable permits.  (GP-0-08-002, VIII.A.5.a.iv; GP-0-10-002, VIII.A.5.a.iv).

j.      NYSDOT has not established and maintained an inventory of post-construction stormwater management practices within its jurisdiction, including practices discharging to the small MS4 that have been installed since March 10, 2003, all practices owned by the small MS4, and those practices found to cause or contribute to water quality standard violations.  NYSDOT has not ensured adequate long-term operation and maintenance of said management practices by trained staff, including inspection to ensure that practices are performing properly.  (GP-0-08-002, VIII.A.5.a.v; GP-0-10-002, VIII.A.5.a.v).

110.    Among NYSDOT's most serious violations of the CWA is its consistent failure to require SWPPP submission, perform SWPPP review, and ensure consistency with

technical standards established under the New York State Stormwater Management Design Manual.  (GP-0-08-002, VIII.A.4.a.iii; GP-0-10-002, VIII.A.4.a.iii).

111.    Under GP-02-02, MS4s were obligated to establish stormwater management programs ("SWMP").

112.    Under § IV.C of Permit No. GP-02-02, the SWMP was required to include six "minimum control measures."  These requirements continue to be in effect under the successor permits (GP-0-08-02 and GP-0-10-02).

113.    Minimum control measures ("MCMs") nos. 4 & 5 deserve special attention.  MCM 4 pertains to "construction site stormwater runoff control."  Construction activities that result in land disturbance of greater than one acre require a stormwater discharge permit.  The SWMP program for MCM 4 "must include the development and implementation of: i) an ordinance *or other regulatory mechanism* to require erosion and sediment controls, ii) requirements for construction site operators to implement erosion and sediment control management practices, iii) sanctions to ensure compliance to the extent allowable by State or local law, iv) requirements for construction site operators to control waste such as discarded building materials, concrete truck washout, chemicals, litter, and sanitary waste at the construction site that may cause adverse impacts to water quality . . ., vii) procedures for site inspections and enforcement of control measures . . ., viii) education and training measures for construction site operators . . ., [and] ix) measurable goals and appropriate management practices to ensure the reduction of all pollutants of concern . . . ."  (emphasis added).

114.    Similarly, in order to satisfy MCM 5, pertaining to post-construction stormwater management, a permitee must act to, among other things, "[adopt] an ordinance *or*

*other regulatory mechanism* to address post-construction runoff from new development and re-

development projects to the extent allowable under State or local law . . . ."  (emphasis added).

115.     The regulatory mechanism pertaining to MCM 4 and 5 (construction site

stormwater runoff control) must ensure that controls are in place that protect water quality and

reduce the discharge of pollutants "to the maximum extent practicable."

116.     The due date for compliance with these obligations was January 8, 2008.

117.     NYSDOT has failed to comply with these permit conditions, thus

NYSDOT is in violation of the CWA.

118.     The CWA authorizes citizens to enforce an effluent limitation or other

limitation under Section 301 or 302 including the prohibition in Section 301, 33 U.S.C. § 1311,

against the operation of a point source other than in conformance with an NPDES permit

pursuant to section 402 of the Act, 33 U.S.C. Section 1342. 33 U.S.C. § 1365(a)(1); 33 U.S.C. §

1365(f)(6).

119.     Plaintiff is entitled to a judgment for prospective injunctive relief against

the Defendant Stanley Gee, preventing him from violating the CWA and ordering him to require

NYSDOT to comply with its MS4 permit.

## JURY DEMAND

120.     Plaintiffs hereby demand trial by jury on all issues so triable herein.

# REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs demand the following relief:

121.    That the Court declare that Defendants have violated the CWA by discharging pollutants to waters of the United States other than in conformance with a valid permit;

122.    That the Court order Defendants (excluding Acting Commissioner Stanley Gee) to pay civil penalties in an amount not to exceed $37,500 per day for each violation of the CWA, pursuant to 33 U.S.C. § 1319(d);

123.    A preliminary and permanent injunction:

a.    Ordering Defendants to remediate all environmental damages caused by their violations of the CWA;

b.    Ordering Defendant NYSDOT (Acting Commissioner Stanley Gee) to apply for coverage under the SPDES General Permit for Stormwater Discharges from Construction Activities, where it allows construction in the NYSDOT rights-of-way;

c.    Ordering Defendant NYSDOT (Acting Commissioner Stanley Gee) to comply with the SPDES General Permit for Stormwater Discharges from Municipal Separate Storm Sewer Systems;

      d.      Ordering Defendants Wal-Mart to comply with the SPDES General Permit for Stormwater Discharges from Construction Activities;

      e.      Ordering Defendant City of North Tonawanda to comply with the SPDES General Permit for Stormwater Discharges from Municipal Separate Storm Sewer Systems;

124.    Granting judgment in Plaintiffs' favor:

      a.      Ordering Defendants to remediate all environmental damages caused by their violations of the CWA;

      b.      Awarding Plaintiffs costs, disbursements, attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated:  October 19, 2010
       Buffalo, New York

**HODGSON RUSS LLP**
*Attorneys for Plaintiffs*

By:␣␣s/Jeffrey C. Stravino␣␣␣␣␣␣␣␣␣␣
      Daniel A. Spitzer, Esq.
      Jeffrey C. Stravino, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000
*dspitzer@hodgsonruss.com*
*jstravino@hodgsonruss.com*