UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

CATHERINE A. KERN, on behalf of herself
  and Clean Water Advocates of
  New York, and

KATHY R. KAMINSKI, on behalf of herself
  and the Niagara River Preservation Society,

                              Plaintiffs,

                                                **DECISION AND ORDER**
                                                10-CV-827A

            v.


WAL-MART STORES, INC.,
WAL-MART REAL ESTATE BUSINESS
   TRUST, and
CITY OF NORTH TONAWANDA,

                              Defendants.

═══════════════════════════════════

## I.    INTRODUCTION

        Pending before the Court are separate motions to dismiss by defendants

Wal-Mart Stores, Inc. and Wal-Mart Real Estate Business Trust ("Wal-Mart

collectively); and by defendant the City of North Tonawanda (the "City"); pursuant

to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP").  Wal-Mart

contends that individual plaintiffs Catherine A. Kern ("Kern") and Kathy R.

Kaminski ("Kaminski"), and the respective unincorporated associations over

which they preside, have not alleged any ongoing violations of the Clean Water

Act ("CWA"), 33 U.S.C. §§ 1251–1387, that would allow them to maintain a

citizen suit under 33 U.S.C. § 1365(a)(1).  Wal-Mart's motion indirectly raises the

question of plaintiffs' standing because plaintiffs would lack standing as against it

if no ongoing violation occurred.  The City contends explicitly that plaintiffs lack

standing because, *inter alia*, they have not alleged an "injury in fact" and because

Kern and her association never served a notice of intent to sue letter as required

under 33 U.S.C. § 1365(b)(1)(A).  The Court held oral argument on January 24,

2011.  For the reasons below, the Court grants the pending motions and

dismisses the complaint for lack of standing.

## II.    BACKGROUND

### A.    *The Wal-Mart Development Project*

This case concerns allegations that defendants have not followed various

requirements of the CWA and its associated regulations for stormwater[1] drainage

as they planned a new Wal-Mart Supercenter in the City.  This development

project (the "Project") would occur on a parcel of approximately 39 acres (the

"Project Site") located at the intersection of Niagara Falls Boulevard and Erie

Avenue.  Phase I of the Project would involve demolition of the then-existing

Melody Fair Theater ("Melody Fair") to its foundation.  Phase II of the Project then

would involve whatever construction activity would be necessary to build the new

Wal-Mart Supercenter.  On or about November 27, 2006, Wal-Mart submitted a

---

[1] "Storm water means storm water runoff, snow melt runoff, and surface runoff and drainage."  40 C.F.R. § 122.26(b)(13).

site plan approval application to the City concerning the Project.  In January

2007, the City's Planning Commission began to review the proposed site plan.

On April 2, 2007, the Planning Commission issued a "positive declaration" that

required Wal-Mart to prepare a full Environmental Impact Statement ("EIS").

Wal-Mart submitted an EIS to the Planning Commission on or about August 6,

2007.  Over the next eight months, the Planning Commission required Wal-Mart

to submit an alternate site plan in response to stormwater and other

environmental issues; conducted public hearings; and solicited public comments

about the Project.  On May 12, 2008, the Planning Commission adopted the EIS.

On September 8, 2008, the Planning Commission approved Wal-Mart's proposed

site plan for the Project.

### B.    *The City's Stormwater Management*

Part of the process of approving Wal-Mart's proposed site plan for the

Project involved making sure that the Project complied with several

environmental permits concerning the City's sewer system.  Effective January 8,

2003, the state issued a State Pollutant Discharge Elimination System ("SPDES")

General Permit, No. GP-02-02.  GP-02-02 generally authorized discharges of

stormwater from the City's sewer system into nearby waterways.  GP-02-02

required the City to develop and to enforce a stormwater management program

("SWMP") to reduce pollutant discharge from its sewer system to the "maximum

extent practicable."  40 C.F.R. § 122.34.  Accordingly, the City prepared an

SWMP and solicited public comment.  The City received no public comments, including from plaintiffs, and plaintiffs have not alleged otherwise.  The City subsequently adopted the SWMP on June 19, 2007 and revised it in October 2008.  Under GP-02-02, individual developers like Wal-Mart could avoid having to apply for their own SPDES permits by preparing a document called a Stormwater Pollution Prevention Plan ("SWPPP"), which lays out a plan for controlling runoff and pollutants from a development site during and after construction activities.  Upon completion of an SWPPP, a developer could file a document with the state Department of Environmental Conservation called a Notice of Intent ("NOI"), which would notify the state that the developer sought coverage under the general permit.  Unless the state stated otherwise, the developer would have coverage five days after filing the NOI.

Three other general permits issued by the state affected the City's sewer system.  When GP-02-02 expired on January 8, 2008, the state replaced it with general permit GP-0-08-002, which also gave general permission for stormwater discharges from sewer systems like the City's.  When GP-0-08-002 expired on April 30, 2010, the state replaced it with general permit GP-0-10-002, which expires on April 30, 2015.  Additionally, the state has issued general permit GP-0-10-001, which is a general permit authorizing stormwater discharge specifically from construction activities.

4

Under the state's SPDES regulatory framework, the City also has been required since 2008 to file annual reports regarding its efforts to prevent stormwater pollutants from entering its sewer system.  The annual reports are available to the public.  The 2010 annual report in particular was published in draft form first, to allow the public to comment on it before final issuance.  Through a press release and an article in a local newspaper (Dkt. Nos. 23-6, 23-7), the City invited the public to a display of the draft 2010 annual report on May 18, 2010.  The City received no public comments, including none from plaintiffs.  The City subsequently issued the final report on May 26, 2010.

### C.   *Prior Litigation in State Court*

In an attempt to stop Wal-Mart from commencing the Project, Kern—through a now-defunct unincorporated association called North Tonawanda First—brought four different lawsuits against Wal-Mart, the City, and others in New York State Supreme Court.  The parties have attached to their motion papers the court decisions or other filings that ended each case.  The outcome of each of the state cases provides important background for this case, and this Court accordingly will review each of those outcomes.

### 1.   *First Lawsuit (Niagara County Index No. 134993)*

In the first state lawsuit, Kern's former association—plus two other plaintiffs not involved in this case—sought to annul the decision by the City's Planning Commission to accept the EIS and site plan for the Project.  In a petition filed

5

pursuant to Article 78 of New York's Civil Practice Law and Rules ("CPLR"), the plaintiffs asserted 11 causes of action against all of the defendants.  Ten of the causes of action are not relevant to this case, but in the first cause of action, plaintiffs asserted that the Planning Commission violated the Code of the City of North Tonawanda by failing to require preparation and review of an SWPPP prior to plan site approval.

In a Decision and Order dated June 19, 2009 (Dkt. No. 20-7), the state court (Boniello, *J.*) denied a motion to dismiss the first cause of action and annulled the site plan approval.  The court found that the defendants took considerable measures to prepare an EIS and proposed site plan, and to invite public comments on those documents.  Nonetheless, the City Code explicitly required submission of an SWPPP before final site plan approval, and this did not occur.  The court remanded the site plan approval process to the Planning Commission for further proceedings consistent with the City Code.

Wal-Mart and the City subsequently corrected the procedural deficiency that the state court identified when it annulled the site plan approval.  In response to the court's finding of a procedural deficiency, Wal-Mart submitted an SWPPP to the City's Department of Engineering on June 30, 2009.  The SWPPP set forth details for erosion and stormwater management once construction at the Project Site began.  The City Engineer, in his capacity as the designated Stormwater Management Officer, certified that the SWPPP met all applicable state and local

requirements and submitted it to the Planning Commission with a

recommendation that it be approved.  On October 5, 2009, the Planning

Commission approved the SWPPP and again approved the final site plan for the

Project.  On October 14, 2009, Wal-Mart and the City renewed their motion to

dismiss the first and only remaining cause of action from the plaintiffs' petition.

Without opposition from the plaintiffs,[2] the court granted the motion and

dismissed the case with prejudice on December 15, 2009.  (Dkt. No. 20-9.)

      2. *Second Lawsuit (Niagara County Index No. 138884)*

On November 4, 2009, Kern's former association—now acting alone—filed

its second state lawsuit, an Article 78 petition challenging the Planning

Commission's second approval of the final site plan for the Project.  In paragraph

20 of the petition, and despite approval of the SWPPP on October 5, 2009, Kern

asserted that "one of the important issues before this Court is Respondents'

disavowal of an obligation to prepare a stormwater pollution prevention plan prior

to site plan approval.  As a result, no such 'SWPPP' has been prepared for,

submitted to, or reviewed by and approved by the City of [North] Tonawanda, and

the public has not had an opportunity to comment upon same."  (Dkt. No. 20-14 ¶

20.)  Wal-Mart and the City moved to dismiss the petition on the merits and on

---

    [2] Through a short attorney affirmation dated November 16, 2009, Kern
asked the court to deny the motion as moot because she had filed a new Article
78 proceeding—the second state lawsuit—to challenge the second approval of
the final site plan.  (*See* Dkt. No. 20-8 at 3.)

*res judicata* grounds.  Kern filed no papers in opposition to the motion.  Instead, on February 23, 2010, the day before oral argument before Justice Boniello, Kern sent Justice Boniello a letter stipulating to discontinuance of the petition with prejudice.  (Dkt. No. 20-10 at 2.)

3.    *Third Lawsuit (Niagara County Index No. 139795)*

On February 8, 2010, Kern's former association—once more acting alone—filed a third lawsuit in state court in another attempt to stop the Project.  In this lawsuit, Kern alleged that the City's sale of certain unused rights-of-way for the sake of the Project violated the state constitution.  Wal-Mart and the City moved to dismiss the third lawsuit.  At oral argument, Kern appeared without having filed any opposition papers, prompting dismissal of two claims and a three-week adjournment on a third claim.  After the rescheduled oral argument, the state court (Kloch, *J.*) granted the motion and dismissed the third lawsuit with prejudice in an Order dated May 28, 2010.  (Dkt. No. 20-11.)

4.    *Fourth Lawsuit (Niagara County Index No. 141275)*

On July 7, 2010, Kern's former association—yet again acting alone—filed a fourth lawsuit in state court in another attempt to stop the Project.  In this lawsuit, Kern alleged that the subdivision of the Project Site was improper.  Wal-Mart and the City made a motion to dismiss the lawsuit and to impose sanctions on Kern and her counsel for frivolous litigation.  In a Decision and Order dated September 22, 2010, the court (Boniello, *J.*) granted the motion, dismissed the lawsuit, and

8

permitted discovery related to the source or sources of the funding for Kern's

repeated litigation.  Two paragraphs from Justice Boniello's Decision and Order

are worth noting:

> This is the fourth lawsuit filed by the Petitioner in the last two years
> regarding a proposed development by Wal-Mart.  Previously, this
> Court concluded that the approval by Respondent Planning
> Commission of the site plan was neither arbitrary or unreasonable
> nor an abuse of discretion based upon the extensive record and the
> fact that two public hearings were held over a two-year review
> process.
>
> * * *
>
> All other allegations asserted by the Petitioner not specifically
> addressed herein have been considered by the Court and are also
> found to be without merit.  Clearly, the Petitioner's fourth lawsuit
> which is filled with re-statements of matters previously litigated and
> half-truths has only served to further delay the project and cause the
> Respondents to incur additional legal fees.  In fact, the Respondents
> have raised the possibility that such delay tactics are consistent with
> a national campaign allegedly funded by outside groups whose sole
> goal is to block Wal-Mart developments.

(Dkt. No. 20-13 at 5–6.)

Interestingly, three of Kern's four state lawsuits were dismissed by court

order, yet Kern apparently never appealed any of those final orders to the

Appellate Division of New York State Supreme Court.  Also, plaintiffs never

mention or hint at the state lawsuits, the state dismissals, and the absence of

state-level appeals in their complaint and memorandum of law in this case.

**D.**   *The Pending Federal Litigation*

The case pending before this Court features Kern yet again, except now both individually and as President of a new unincorporated association called Clean Water Advocates of New York ("CWANY").  "CWANY is an unincorporated association whose members are residents of the State of New York and citizens of the United States" (Dkt. No. 1 ¶ 2) though not the same unincorporated association over which she presided during the four state lawsuits.[3]  Plaintiffs in this case also include Kaminski, a resident of Williamsville who is suing individually and as President of an unincorporated association called the Niagara River Preservation Society ("NRPS").  "NRPS is an unincorporated association whose members are residents of the State of New York and citizens of the United States."  (*Id.* ¶ 3.)  Plaintiffs have asserted that they and the members of CWANY and NRPS use Tonawanda Creek, the Niagara River, and Lake Ontario for drinking water and for recreational purposes.

Before filing the present case before this Court, each associational plaintiff —but not the individual plaintiffs—served notices of intent to sue pursuant to the notice requirements of 33 U.S.C. § 1365(b)(1)(A).  In a letter dated September 2,

---

[3] In the state lawsuits, as mentioned above, Kern presided over an unincorporated association called North Tonawanda First.  On December 9, 2010 (Dkt. No. 20-3), Kern's former counsel, David J. Seeger, wrote to Justice Boniello to announce that North Tonawanda First dissolved.  The letter came just over two months after Justice Boniello authorized discovery related to the source or sources of the funding for Kern's repeated litigation.

2008, NRPS gave the City notice of "continuing and ongoing violations of the

Clean Water Act" arising from "the City's failure to obtain a Clean Water Act §402

permit to discharge stormwater from the City's municipal separate stormwater

sewer systems (MS4s) into waters of the United States.  Additional violations

arise from the City's failure to obtain coverage under and to comply with the

terms, conditions and effluent limitations of the State Pollution Discharge

Elimination System (hereafter SPDES) general permit for stormwater discharges

from municipal separate stormwater sewer systems (MS4s) (hereafter GP-02-

02)."  (Dkt. No. 1-1 at 3.)  In a letter dated July 6, 2010, CWANY gave Wal-Mart

notice that the Melody Fair demolition "has involved physical alteration including

scraping, clearing, and other soil disturbances totaling several acres.  Surface

water runoff from this disturbed area flows into the aforesaid receiving waters.

The Wal-Mart project site itself is a point source."  (Dkt. No. 1-2 at 9.)  The notice

to Wal-Mart asserted further that "the stormwater pollution prevention plan

('SWPPP') issued by Wal-Mart contains various obligations that are deemed

effluent limitations and standards under the Clean Water Act, if and when

Wal-Mart succeeds in obtaining SPDES General Permit coverage.  Wal-Mart has

failed to honor these obligations, which include failure to abide by the 'erosion

and sediment controls' set forth in V.A, pp. 17-20, of the SWPPP dated June 26,

2009 prepared by Wal-Mart and furnished to the City of North Tonawanda, which

was the SWPPP approved in the City's 'MS4 Acceptance Form.'"  (*Id.* at 10.)

Several months after the July 6, 2010 letter to Wal-Mart, plaintiffs commenced this case on October 19, 2010.  In their complaint, plaintiffs asserted one claim against Wal-Mart and one claim against the City.[4]  According to the complaint, Wal-Mart has engaged in construction activities at the Project Site that have disturbed the soil, creating surface water runoff that flows through the City's sewer system into Tonawanda Creek.  Wal-Mart allegedly has engaged in these activities without authority from "the SPDES General Permit for Discharges from Construction Activities or any other permit issued by NYSDEC pursuant to its delegated authority under the CWA."  (Dkt. No. 1 ¶ 40.)  Meanwhile, the City "has not developed, implemented, and enforced a stormwater management program ('SWMP') designed to reduce the discharge of pollutants from its MS4 to the maximum extent practicable, as required by the applicable permits (GP-02-02, IV.B; GP-0-08-002, IV.A; GP-0-10-002, IV.A)."  (*Id.* ¶ 49.)  The City allegedly failed to publish draft annual reports required under its general permits, to solicit public comments on those drafts, and to publish final annual reports in the proper format, all for a period of time running from April 1, 2008 through March 31, 2010.  Finally, the City "has not developed and implemented an operation and maintenance program reducing and preventing pollutant discharges from its own municipal activities."  (*Id.* ¶ 65.)

---

[4] Plaintiffs voluntarily dismissed two other claims against former defendant Stanley Gee, who had been sued individually and as Acting Commissioner of the New York State Department of Transportation.  (*See* Dkt. No. 17.)

In response to plaintiffs' complaint, Wal-Mart and the City filed their respective motions to dismiss.  According to Wal-Mart, it has completed only Phase I of the Project—the demolition of Melody Fair—and plaintiffs concede that the demolition was complete months ago.  Phase I involved no soil disturbance, and thus no stormwater runoff, because the demolition removed Melody Fair only to its existing foundation.  Because no soil disturbance occurred and because the demolition is complete, Wal-Mart contends that plaintiffs cannot bring a citizen suit under the CWA, which requires ongoing violations.  Further, Wal-Mart is aware of the need to file an NOI pursuant to its SWPPP, and that it will do so before Phase II and its inevitable soil disturbances begin.  Plaintiffs oppose Wal-Mart's motion on factual grounds, insisting that the act of demolishing Melody Fair necessarily disturbed the soil and required the NOI to be filed before Phase I.

The City's motion to dismiss focuses explicitly on standing.  According to the City, plaintiffs lack standing to challenge its annual reports or the solicitation of public feedback for them because the any such problems ended a year ago, and because documentary evidence shows that the City did indeed solicit public comments.  As a result, plaintiffs have not alleged any ongoing violations against the City with respect to annual reports.  Further, plaintiffs are advancing their federal lawsuit as if no SWMP existed at all and as if the City's annual reports contained no information about ongoing permit compliance, when documentary evidence shows otherwise.  The associational plaintiffs allegedly lack standing

because their members' claimed injuries are indistinguishable from Kern and

Kaminski's, and because they have not explained what goals or interests they

have that are germane to the lawsuit.  Finally, plaintiffs lack Article III standing for

a failure to allege any injury in fact caused by the City's paperwork, and that Kern

and CWANY never served a notice of intent to sue.  Plaintiffs claim that they have

standing because they have pled a curtailment of their use of Tonawanda Creek

stemming from the City's unwillingness to control runoff from the Project Site.

Plaintiffs assert further that they are organized specifically to address the problem

of runoff from the Project Site.  Finally, plaintiffs concede that Kern and CWANY

did not appear on the notice letter sent to the City, but that Kamisnki and NRPS's

letter suffices to put the City on notice of its violations of the CWA.

The City also seeks costs and fees in an effort to stop what it considers

serial and frivolous litigation by plaintiffs.

## III.   DISCUSSION

### A.   *FRCP 12(b)(1) Generally*

"A case is properly dismissed for lack of subject matter jurisdiction under

Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it."  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citation

omitted).  "[W]e must accept as true all material factual allegations in the

complaint, but we are not to draw inferences from the complaint favorable to

plaintiffs.  We may consider affidavits and other materials beyond the pleadings

14

to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citation omitted).

One initial issue, though, is what documents or information the Court may consider. The parties have submitted competing factual assertions about whether a soil disturbance occurred in Phase I and whether the City does have SPDES permits, an SWMP, and annual reports in place to manage stormwater discharge into its sewer system. When handling factual information in a FRCP 12 posture, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citations omitted). Here, Wal-Mart has submitted the affidavit of engineer Chad Schuster (Dkt. No.

20-15) to support its contention that plaintiffs have failed to allege any CWA

violations because the demolition of Melody Fair did not disturb the soil at the

Project Site.  This affidavit contradicts plaintiffs' core contention that Wal-Mart is

violating the CWA because it disturbed soil at the Project Site before obtaining

coverage under the City's SPDES general permits.  The Court cannot credit the

Schuster affidavit without making a factual finding about soil disturbances at the

Project Site, and such a factual finding is not appropriate in an FRCP 12 posture.

The Court thus will disregard the Schuster affidavit for purposes of resolving the

pending motions.  In contrast, plaintiffs' complaint refers to and relies heavily on

notice letters, SPDES general permits, and documents related to the SWPPP

and SWMP.  The parties have attached these documents to their respective

papers, and neither side has challenged the authenticity of those attachments.

The Court thus will review those documents in assessing the pending motions.

   **B.    *Standing***

   Defendants have challenged plaintiffs' standing to maintain this action.

The challenges to plaintiffs' standing take several forms.  In Wal-Mart's view, no

CWA violation has occurred at all; alternatively, any violation that did occur during

the demolition of Melody Fair is now a past violation because the demolition has

concluded.  Wal-Mart casts this argument as an absence of subject-matter

jurisdiction, but the argument also implicates plaintiffs' standing because plaintiffs

cannot seek relief if nothing has happened to cause them injury.  The City's

16

arguments on standing are much more explicit, as noted above.  According to the

City, the associational plaintiffs, CWANY and NRPS, lack standing because none

of their members have asserted injury and because nothing is known about their

purposes.  The individual plaintiffs lack standing because their allegation that

certain waterways are being polluted does not specify the pollution in question

and thus is too conclusory in nature.  The individual plaintiffs have failed to

connect any action of the City to any alleged injury.  Finally, any claims by

plaintiffs Kern and CWANY should be dismissed for failure to serve a proper

notice of intent to sue.  Defendants' challenges implicate constitutional and

statutory standing for both the individual and associational plaintiffs, and the

Court will analyze each form of standing in turn.

        1.    *Article III Standing*

      To bring a civil action, each plaintiff must have constitutional standing.  *See*

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("Hypothetical

jurisdiction produces nothing more than a hypothetical judgment—which comes

to the same thing as an advisory opinion, disapproved by this Court from the

beginning . . . . The statutory and (especially) constitutional elements of

jurisdiction are an essential ingredient of separation and equilibration of powers,

restraining the courts from acting at certain times, and even restraining them from

acting permanently regarding certain subjects.") (citations omitted).  Whether

plaintiffs in a civil action are individuals or associations, the standard for

constitutional standing is straightforward.  "[T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.  Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in the original) (internal quotation marks and citations omitted).  "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citation omitted).

As for burden of proof, "[t]his triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."  *Steel Co.*, 523 U.S. at 103–04 (citation omitted).  To meet their

18

burden of proof, plaintiffs have submitted only their complaint.  The complaint, of course, is just an initial pleading and is not evidence.  *Cf. Laidlaw*, 528 U.S. at 181–82 (holding that the plaintiffs had standing based on affidavits and deposition testimony explaining how mercury discharges into the North Tyger River in South Carolina).  Defendants cannot use plaintiffs' lack of evidence to their advantage, however, because they are the ones who chose to attack plaintiffs' claims before any opportunity for factual development.  *Cf. Steel Co.*, 523 U.S. at 105 ("This case is on appeal from a Rule 12(b) motion to dismiss on the pleadings, so we must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations.") (citation omitted).

      a.     Do the Individual Plaintiffs Have Article III Standing?

Initially, for Kern and Kaminski to remain in this action as individual plaintiffs, they must satisfy the three requirements for Article III standing set forth in *Lujan*.  With respect to the first requirement of an injury in fact, Kern and Kaminski have alleged that Wal-Mart, by demolishing Melody Fair without first seeking coverage under an SPDES general permit, created an unauthorized source of stormwater runoff that is polluting Tonawanda Creek and downstream waters.  Kern and Kaminski have alleged further that they use Tonawanda Creek for drinking and recreational activities, and have implied that they have curtailed those uses to avoid exposure to the pollutant of stormwater.  For purposes of FRCP 12, these allegations of curtailed activities in Tonawanda Creek suffice to

plead an injury that Wal-Mart caused.  *Cf. Laidlaw*, 528 U.S. at 183 ("We have

held that environmental plaintiffs adequately allege injury in fact when they aver

that they use the affected area and are persons for whom the aesthetic and

recreational values of the area will be lessened by the challenged activity.")

(internal quotation marks and citations omitted).

The alleged injury against the City is another matter.  The core allegation

that Kern and Kaminski have made against the City is that the City is allowing

unauthorized stormwater discharges to occur because it lacks permits and plans

that would manage such discharges.  Documentary evidence contradicts this

allegation.  The City implemented an SWMP in 2007 and approved a SWPPP

and final site plan in 2009 specifically in response to a state court order.  The

state court dismissed Kern's first state lawsuit in reliance on the SWPPP and final

site plan that the City approved in 2009.  The City has filed annual reports since

2008; these annual reports are publicly available.  The City solicited public

comments for its SWMP and for its 2010 annual report and received none,

including none from Kern and Kaminski.  Under these circumstances, even if the

City failed to solicit public comments before issuing the 2008 and 2009 annual

reports, that problem has been corrected.  The only other allegations that might

remain against the City relate to improper formatting of the annual reports.  Kern

and Kaminski cannot and have not alleged what injury stemmed from improper

formatting of paperwork from April 1, 2008 through March 31, 2010.  Accordingly,

Kern and Kaminski have not satisfied the first requirement of standing as against the City.

With respect to the second requirement in *Lujan* of a connection between injury and conduct, Kern and Kaminski have alleged that Wal-Mart's demolition of Melody Fair has caused stormwater runoff that, in turn, has caused them to limit their use of Tonawanda Creek.  Assuming, for purposes of this motion, that stormwater does in fact run from the Project Site and find its way into Tonawanda Creek, a direct connection exists between that runoff and the decision by Kern and Kaminski not to expose themselves to it.  Defendants have not alleged any other sources of potentially improper stormwater discharge that would confound that connection.  In contrast, Kern and Kaminski have not demonstrated how improper formatting of paperwork from April 1, 2008 through March 31, 2010 might have caused them to curtail drinking from and otherwise using Tonawanda Creek.  Kern and Kaminski thus have satisfied the second requirement for standing as against Wal-Mart but not as against the City.

With respect to the third requirement in *Lujan* of redressability, Kern and Kaminski have asked for relief in the form of a declaratory judgment, civil penalties, and costs, along with a preliminary and permanent injunction ordering defendants to remediate "all environmental damages" that they have caused and to comply with their respective permit requirements.  In the context of standing, Kern and Kamisnki's requests for relief are problematic in some ways.  A

declaratory judgment and an assessment of civil penalties and costs would not, by themselves, make Kern and Kaminski whole in any way for whatever damages they have suffered from curtailed use of Tonawanda Creek. *Cf. Steel Co.*, 523 U.S. at 105–06 (finding no redressability in a request for a declaratory judgment, civil penalties, and inspections of compliance reports, where "[n]one of the specific items of relief sought, and none that we can envision as 'appropriate' under the general request, would serve to reimburse respondent for losses caused by the late reporting, or to eliminate any effects of that late reporting upon respondent."). Kern and Kaminski also have not alleged any "environmental damages," meaning that this Court would not know what to order defendants to do to make Tonawanda Creek more hospitable to recreational and other activities. Finally, as noted above, any injunction ordering the City to comply with permit requirements would be too vague in light of the permits and plans that the City already has in place. That said, Kern and Kaminski could benefit from an injunction ordering Wal-Mart to file a Notice of Intent with the state for coverage under the SPDES general permits. Such a filing would allow the state to review whether Wal-Mart has taken the steps necessary for an authorization of stormwater discharge from the Project Site. Under these circumstances, Kern and Kaminski have satisfied the third requirement for standing as against Wal-Mart but not as against the City.

In sum, Kern and Kaminski have established constitutional standing to bring suit against Wal-Mart but not the City.

        b.        Do the Associational Plaintiffs Have Article III Standing?

For CWANY and NRPS to remain in this action, they must satisfy the three requirements for constitutional standing set forth in *Laidlaw*. The first requirement, which essentially encompasses the three requirements for an individual's Article III standing from *Lujan*, holds that the members of these associations must have standing in their own right.[5] To this end, CWANY and NRPS make assertions in the complaint for their members that are identical to the assertions that Kern and Kaminski made for themselves. That is, CWANY and NRPS have asserted that their members use Tonawanda Creek for drinking water and for recreational activities, and have curtailed those activities to avoid exposure to the pollutant of stormwater coming from the Project Site. CWANY and NRPS have asserted further, as did Kern and Kamisnki, that the City lacks permits and plans to manage stormwater discharge, despite documentary evidence to the contrary. Finally, CWANY and NRPS have asserted that the City

---

[5] The parties have not identified who the members of CWANY and NRPS are, but identifying members of associations is not necessary for an FRCP 12 motion. *See Bldg. & Const. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006) ("There is no heightened pleading requirement for allegations of standing . . . . [T]he defendants cite to no authority—nor are we aware of any—that supports the proposition that an association must 'name names' in a complaint in order properly to allege injury in fact to its members.") (citations omitted).

improperly formatted annual reports and related paperwork from April 1, 2008 through March 31, 2010.  As the Court stated above when assessing Kern and Kaminski's individual standing, the associations' allegations sufficiently link Wal-Mart's actions at the Project Site with their members' decisions to curtail their activities in Tonawanda Creek.  Similarly, the associations have not pled any information suggesting that their members curtailed their activities in Tonawanda Creek because of improper formatting of City paperwork that ended a year ago.  Consequently, CWANY and NRPS have satisfied the first requirement of associational standing as against Wal-Mart, but not as against the City.

The second requirement for associational standing holds that the interests at stake are germane to the organization's purpose.  "[T]he 'germaneness' requirement . . . should be read in accordance with the modest yet important goal of preventing litigious organizations from forcing the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and about which few of their members demonstrably care.  The proper inquiry at the pleading stage is thus a limited one: A court must determine whether an association's lawsuit would, if successful, reasonably tend to further the general interests that individual members sought to vindicate in joining the association and whether the lawsuit bears a reasonable connection to the association's knowledge and experience."  *Downtown Dev.*, 448 F.3d at 149 (internal quotation marks and citations omitted).  Here, the associational plaintiffs point to

24

paragraphs two and three of the complaint to explain what their purposes are. Those two paragraphs, however, consist of only four sentences. After identifying who Kern and Kaminski are, each paragraph states that CWANY or NRPS "is an unincorporated association whose members are residents of the State of New York and citizens of the United States." (Dkt. No. 1 at ¶¶ 2, 3.) Plaintiffs have not pled any goals or purposes for CWANY or NRPS. Even if plaintiffs need not divulge the names of the members of CWANY and NRPS (*see* note 6 *supra*), they have not explained how many members there are, how often they meet, what they do to advance any associational goals or purposes, or whether they have any leadership structure beyond having Kern and Kaminski as presidents. Plaintiffs also have not explained when CWANY or NRPS even came into being, although curiously, the information available on the docket suggests that these associations came into being after Kern dissolved her previous association, North Tonawanda First, in December 2010 to try to dodge discovery proceedings that Justice Boniello authorized in state court. (*See* Dkt. No. 20-3; note 4 *supra.*)

CWANY and NRPS thus cannot satisfy the second requirement for associational standing as against any defendants. Associational plaintiffs do not have to *prove* their goals and purposes at the pleading stage of litigation, but if they do not even *plead* what they are then courts should not have to guess. *Compare* (Dkt. No. 1 ¶¶ 2, 3) *with Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 549 (5th Cir. 2010) ("AAPS is a not-for-profit

membership organization incorporated under the laws of Indiana and

headquartered in Tucson, Arizona.  Its membership includes thousands of

physicians in nearly every state, including Texas.  AAPS asserts that part of its

mission is to protect its members from arbitrary and unlawful governmental

action.") *and id.* at 551 n.2 ("Through its affidavits and acts, AAPS has

demonstrated its obvious interest in representing its members against alleged

governmental abuse.") *and Humane Soc. of U.S. v. HVFG, LLC*, No. 06 CV 6829,

2010 WL 1837785, at *2 (S.D.N.Y. May 6, 2010) ("HSUS is a non-profit

membership organization with over 846,000 members and constituents in New

York State and over 11 million members and constituents total.  It is a self-

described 'animal protection organization,' whose goals include 'protecting the

nation's wildlife and wildlands and fostering the humane treatment of all animals.'

*See* The Humane Society of the United States, About Us: Overview,

http://www.humanesociety.org/about/overview/ (last visited Apr. 18, 2010).") *and*

*JFK Health & Welfare Fund, Inc. v. Analie Tours, Inc.*, No. 06-CV-2868, 2008 WL

819066, at *1 (E.D.N.Y. Mar. 25, 2008) ("JFK Health is a New York State

nonprofit corporation located at JFK airport in Queens, New York.  At all pertinent

times, Ciccolilli was its president.  JFK Health organizes activities for its

members, who are employees or retired employees of JFK Airport.").

The third requirement for associational standing holds that neither the

claim asserted nor the relief requested requires the participation of individual

members in the lawsuit.  "Noting that the third prong . . . concerns claims that
would require individualized proof, such as claims for damages, we have stated
that where the organization seeks a purely legal ruling without requesting that the
federal court award individualized relief to its members, the . . . test may be
satisfied."  *Downtown Dev.*, 448 F.3d at 150 (internal quotation marks and
citations omitted).  In their complaint, plaintiffs seek a declaratory judgment, an
assessment of civil penalties and costs, and an injunction ordering defendants to
"remediate all environmental damages" and to comply with relevant permits.  As
noted above, the request to remediate environmental damages is problematic
because plaintiffs have not pled any environmental damages.  The complaint, on
its face, rests entirely on the premise that any stormwater that runs off of the
Project Site is a *per se* pollutant, and that the mere presence of stormwater runoff
in Tonawanda Creek is an environmental harm.  This pleading problem, however,
would not require information from individual members of CWANY or NRPS to
resolve.  The other relief requested is not peculiar to any particular member of
CWANY or NRPS, since none of it would change based how any particular
member has been or will be using Tonawanda Creek.  CWANY and NRPS thus
satisfy the third requirement for associational standing.

    In sum, while CWANY and NRPS satisfied the last requirement for
associational standing, they fail the first requirement as against the City and fail

the second requirement as against all defendants.  CWANY and NRPS thus are dismissed entirely as litigants in this case for lack of standing.

    2.    *Statutory Standing*

Even though Kern and Kaminski have established constitutional standing to bring suit against Wal-Mart, they also need to establish that they have satisfied the procedural prerequisites to citizen suits under the CWA.  "No [citizen] action may be commenced . . . prior to sixty days after *the plaintiff has given notice* of the alleged [effluent] violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order . . . ."  33 U.S.C. § 1365(b)(1)(A) (emphasis added).  "Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice."  40 C.F.R. § 135.3(a).  "Under a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit . . . . [W]e are not at liberty to create an exception where Congress has declined to do so."  *Hallstrom v. Tillamook County*, 493 U.S. 20, 26–27 (1989) (enforcing notice requirements in the Resource Conservation and Recovery Act of 1976

28

("RCRA") that, like the ones in the CWA, were modeled after the ones in the Clean Air Amendments of 1970, 42 U.S.C. § 7604(b)).

In applying the CWA's notice requirements to the notice letters that plaintiffs attached to their complaint, the Court is concerned that, for whatever reason, neither individual plaintiff gave notice to defendants.  As seen in Exhibit A to the complaint (Dkt. No. 1-1), the only notice that the City ever received came from NRPS, by way of Kaminski as its President.  (*See id.* at 3 ("This letter is written on behalf of the Niagara River Preservation Society . . . .").)  As seen in Exhibit B to the complaint (Dkt. No. 1-2), the only notice that Wal-Mart ever received came from CWANY, by way of Kern as its President.  (*See id.* at 2 ("This letter is written on behalf of CLEAN WATER ADVOCATES OF NEW YORK . . . .").)  CWANY, which as noted above has been dismissed for lack of standing, is the only plaintiff listed in the only notice letter that Wal-Mart received.  The notice letter that Wal-Mart received does not list Kern individually, Kaminski in any capacity, or any other plaintiffs.[6]  As a result, "[i]n this case, none of the Plaintiffs

---

[6] The Court cannot tell from the record whether Kern initially tried to distance herself from any federal litigation to avoid a potential *res judicata* problem.  As the filer of all four state lawsuits on behalf of her prior, defunct association, Kern reasonably could have foreseen and litigated the issue of Wal-Mart's permit coverage for Phase I in any of the three state lawsuits filed before demolition of Melody Fair began in April 2010.  *See, e.g., Niagara Mohawk Power Corp. v. F.E.R.C.*, 162 F. Supp. 2d 107, 140 (N.D.N.Y. 2001) ("Claim preclusion or *res judicata* dictates that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (internal quotation marks and citation omitted).  Any *res judicata* problem, though, would not affect Wal-Mart's concession that it has to

in the action gave notice to the Defendant.  The notice requirement of section

1365(b) has not been met by Plaintiffs."  *Wash. Trout v. Scab Rock Feeders*, 823

F. Supp. 819, 821 (E.D. Wash. 1993).  Since this case has just begun, there is no

reason to attempt to circumvent the notice requirements of the CWA, or

*Hallstrom*, for the sake of an equitable concern over expenditures of time, money,

and effort by the parties.  *See Wash. Trout*, 823 F. Supp. at 821 ("From a

practical view, the best use of judicial resources is to dismiss the case at this

point in the litigation for lack of subject matter jurisdiction rather than risk reversal

on appeal after more expenditures by the parties and the Court."); *Klickitat

County v. Columbia River Gorge Comm'n*, 770 F. Supp. 1419, 1424 (E.D. Wash.

1991) (declining to interpret the notice requirement in the RCRA literally, in part

because "all the parties to this action have committed a substantial amount of

time and energy to this litigation.  To dismiss the claim now because of a failure

to strictly comply with a 60 day notice requirement would be a poor and

ineffective use of judicial resources.").  Under these circumstances, the Court

dismisses Kern and Kaminski as individual plaintiffs for failure to comply with the

notice provisions of the CWA.

   As the Court's analysis of standing leaves no plaintiffs who have standing

to move this case forward, the complaint is dismissed in its entirety.  The Court

will not award costs because any failure by Wal-Mart to secure coverage under

---

obtain permit coverage before proceeding with Phase II of the Project.

the appropriate SPDES permits before Phase II begins may require a re-examination of the issue of permit coverage.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court grants Wal-Mart's motion to dismiss (Dkt. No. 20) and the City's motion to dismiss (Dkt. No. 21).   The complaint is hereby dismissed in its entirety for lack of standing.   The Clerk of the Court is directed to close this case.

SO ORDERED.

_s/ Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED:April 8, 2011